STATE v. MARION WALLENBERG AND ANOTHER.[1]

February 15, 1924.

No. 23,894.

**Agent who in good faith buys intoxicants for another not guilty of sale of liquor.**

The statute forbidding the sale of intoxicating liquor is directed against the seller, not against the purchaser. One who buys for another at his solicitation and as his hired agent and with his money and for his use, in good faith and not as a subterfuge or by way of evasion, does not commit the offense of selling. The evidence was such as to sustain a conviction upon the theory that a sale was made by the defendant; but there was error in the charge in excluding from the consideration of the jury the claim of the defendants that they made no sale, and that one of them acted as agent of the purchaser, of which there was evidence for the jury.

Upon information of the county attorney of Kittson county defendants were charged with the offense of selling intoxicating liquor, tried in the district court for that county before Grindeland, J., who when the state rested denied defendants' motion for dismissal, and a jury which found them guilty as charged in the information. From an order denying their motion for a new trial, defendants appealed. Reversed.

*Halvor Steenerson, Theodore F. Neils,* and *O. O. Myhre,* for appellants.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General and *A. D. Bornemann,* County Attorney, for respondent.

DIBELL, J.

The defendants were convicted of the sale of intoxicating liquor. They appeal from the order denying their motion for a new trial.

The defendants are father and son. Edward, the son, was 18

[1]Reported in 197 N. W. 276.

years old at the time of the offense charged. They lived on the father's farm in Kittson county along the Canadian border.

The state claims that the sale was made to the witness Linder. On June 30, 1922, Linder went to the farm in an auto driven by the witness Griffen. According to the testimony of Linder, corroborated to some extent by Griffen, he bought a quart of moonshine without difficulty, for which he paid either $2 or $2.50 to Edward, who went somewhere and shortly. returned with the liquor.

The facts are entirely different, if the testimony of the two defendants is credited. They say that Linder came to the farm at the time stated; that he talked about buying cattle; that soon he claimed to be sick, and wanted whisky; that they told him they had none; that he suggested that they must know some one in the neighborhood who had; that he besought Edward to get him a quart; that Edward refused; that his father did not want him to have anything to do with it; that finally Edward consented; that Linder gave him $1.50 with which to pay for the moonshine, and fifty cents for his trouble; that he went on his bicycle to the house of a neighbor a mile or so away and bought the moonshine, paying $1.50 for it with Linder's money; and that he returned and delivered it to Linder, who, he says, "hired me to go and get it."

The jury was not required to believe the testimony of the defendants. It was for it to say whether it was true. It was not required to believe the occurrence to be as the two witnesses for the state said it was. It could adopt the theory of the state or of the defendants. If the testimony of the two state's witnesses was true, the defendants are guilty. The theory asserted by the defendants was excluded from the jury on the ground that if true it would not avail as a defense.

The defendants requested this instruction:

"You are instructed that if you find from the evidence that the defendants or either of them acted in good faith as the agent of Alfred Linder to purchase the liquor for him, then there was no sale, and you will find the defendant not guilty."

It was refused. The court charged as follows:

"The court instructs the jury that if you believe the testimony of the defendant, Edward Wallenberg, namely, that he was employed by Linder to get a quart of moonshine liquor whiskey for him and that he did so, then he is guilty. In other words, if the defendant, Edward Wallenberg, did what he told you he did on the witness stand, then he is guilty of this crime."

Referring to the senior Wallenberg, the court charged:

"If you believe from the evidence in this case that Marion Wallenberg told Albert Linder when he asked for a bottle of liquor or moonshine that his boy could go and get Linder a bottle and that Edward did go and get a bottle, then the court instructs the jury that that would be a participation in the sale and the defendant, Marion Wallenberg, would be guilty."

In State v. Provencher, 135 Minn. 214, 160 N. W. 673, Ann. Cas. 1917E, 598, it was held that the offense defined by the statute there under consideration, which was a prosecution for selling in a dry county, where all sales were prohibited, the term "sale" being defined by the statute as defined by our present statute, Laws 1919, p. 537, c. 455, § 1, amended by Laws 1921, p. 589, c. 391, § 1, was in the sale, and not in the purchase; that a purchaser committed no offense; and that one who at his solicitation, and as his hired agent, and with his money, and for his use, in good faith and not as a subterfuge or by way of evasion, bought liquor for him, did not commit the offense of selling.

With the law so construed, the legislature, in framing the statute of 1919, corresponding in general to the Volstead Act, 41 Stat. 305, made no change in its definition of a sale. Our holding in the Provencher case is in harmony with authority. Not only is there an incongruity in holding a purchaser innocent, and his agent acting for him guilty of the same offense, but the legislature might well enough conclude that good policy, favorable to prosecutions, requires that the seller alone be an offender under section 1. See State v. Baden, 37 Minn. 212, 34 N. W. 24; State v. Gesell, 137 Minn. 43, 162 N. W. 683. There is an offense of transportation, it is true, under section 2, but it is not here involved. In some states, it may

be noted, it is an offense to procure liquor for another, or to act as his agent in buying it. Our legislature does not think it wise to have it so. No reason occurs for changing our present holdings. There was error in refusing to submit the claim of the defendants.

Order reversed.