[Nos. 2102–3; 2205–3. Division Three. May 31, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVE KINSEY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE SIMS, *Appellant.*

*Michael L. Everett, Larry C. Stephenson,* and *Critchlow, Williams, Ryals & Schuster,* for appellants (appointed counsel for appeal).

*C. J. Rabideau, Prosecuting Attorney,* and *Laurence S. Moore, Deputy,* for respondent.

GREEN, J.—Willie Sims was convicted on two counts of unlawfully selling heroin for profit. Steve Kinsey was convicted of aiding and abetting Mr. Sims as to one count, and Henry Howard was acquitted of aiding and abetting as to the other count. Messrs. Sims and Kinsey appeal.

Mr. Sims' assigned errors present two issues: (1) Was there sufficient evidence to show that he *sold* heroin within the meaning of RCW 69.50.410(1)? and (2) Did the court err in instructing the jury that delivery of a controlled substance is a lesser–included offense of the crime of sale of a controlled substance?

Mr. Kinsey's contentions are that the court erred in (1) consolidating his trial with that of Messrs. Sims and Howard, and (2) denying his motion for directed verdict. We affirm.

## FACTS

From the evidence, a jury could have found that an informant, who was searched and kept under surveillance by Pasco police officers, went to the apartment of Willie Sims on September 24, 1975, to purchase $275 worth of heroin. The money was given to Mr. Sims who handed it to Steve Kinsey. Mr. Kinsey left the apartment. When he returned with the heroin, he handed it to Mr. Sims who handed it to the informant. The informant then left the apartment and delivered the heroin to the Pasco police. The testimony shows that while the informant was waiting in Mr. Sims' apartment for the return of Mr. Kinsey, one of the officers watched a nearby residence where it was suspected the heroin would be obtained. He saw "one of the Kinseys" arrive at that residence, briefly converse with someone at the front door, and leave. In November 1975, this residence was searched by federal authorities and five ounces of heroin were discovered.

On October 14, 1975, the informant was again searched and thereafter kept under surveillance as he went to Mr. Sims' apartment to make another purchase. This time, the informant had only $40 with which to purchase a half spoon of heroin. He testified that Mr. Sims told him that

> people are not selling half spoons. They were only selling spoons at that time. So he indicated that he had somebody to go in with mine to get the spoon. So he put in $35, and I put in $40, and I gave him the money . . .

According to the informant, Mr. Sims gave the money to Henry Howard who left and later returned with the heroin. Upon his return, he gave the heroin to Mr. Sims who took it and split the spoon in half, giving a half spoon to the informant. The informant then left and delivered the heroin to the Pasco police.

The evidence also shows that the informant was nicknamed "the meat man" because he had allegedly sold stolen meat to various persons in the community and had traded stolen meat to Messrs. Sims and Kinsey in return for heroin.

All of the defendants testified and denied their presence at these transactions. Additionally, Mr. Howard presented as an alibi evidence that he was at his place of employment. Mr. Howard was acquitted and the other defendants were convicted.

## Mr. Sims' Contentions

First, Mr. Sims contends that the evidence does not establish a sale for profit; at most, he argues, it only establishes that he was an agent for the informant purchaser. As a consequence, Mr. Sims claims that the charges should be dismissed because he could not be found guilty of a "sale" of heroin as charged under RCW 69.50.410. He relies upon *State v. Warnock*, 7 Wn. App. 621, 501 P.2d 625 (1972); *State v. Catterall*, 5 Wn. App. 373, 486 P.2d 1167 (1971); and *Adams v. United States*, 220 F.2d 297 (5th Cir. 1955).

These cases are different from the instant case. In *Catterall*, the defendant assisted an informer and his companion in locating someone who would sell them a controlled substance. When that someone was located, the defendant stepped out of the situation while the informer and his companion negotiated and completed a direct purchase with the seller. In those circumstances, the court held that the defendant did not commit the crime of selling a controlled substance. Instead, the defendant was aiding a purchaser and the statute governing the sale of a controlled substance did not apply. In *Warnock*, the court reaffirmed *Catterall*, holding that a purchaser could not be charged as a seller. In *Adams*, the testimony indicated that an informer requested the defendant to obtain heroin from her source. She took the informer with her to a street corner where she met her source and made the purchase. The informer had given her the standard amount of money to pay for the heroin. The defendant testified that she did it as a favor to the informer and kept none of the money. This testimony was not controverted and the court held, as a matter of law, that she was only a purchasing agent or

messenger for the purchaser, and, therefore, the charge of selling heroin should be dismissed.

Here, Mr. Sims denied the transaction in its entirety. In finding the defendant guilty, the jury must have believed the informant. His testimony established that he paid Mr. Sims who had someone go and get the heroin. There is no testimony that it was done as a favor to the informant or that Mr. Sims did not make a profit. Additionally, there is testimony that on previous occasions the informant had traded meat to Mr. Sims and Mr. Kinsey in return for heroin. In these circumstances, it was for the jury to determine whether Mr. Sims was a seller or merely acting as an agent or messenger for the informant purchaser. That issue was properly submitted to the jury under an appropriate instruction. *Chavez v. United States,* 387 F.2d 937 (9th Cir. 1967). There is ample evidence from which the jury could have found that Mr. Sims was a seller. We find no error.

Second, Mr. Sims contends that the court erred in giving instruction No. 10, that the crime of delivery of a controlled substance is a lesser-included offense within the crime of sale of heroin for profit. We need not reach the merits of this issue. The jury found Mr. Sims guilty of an unlawful sale of heroin for profit and, therefore, never reached the question of delivery. Assuming arguendo that the giving of the instruction was erroneous, we are unable to find that the defendant was in any way prejudiced by it.

## MR. KINSEY'S CONTENTIONS

First, Mr. Kinsey contends that the court erred in consolidating the trial upon his charge of aiding and abetting Mr. Sims in the sale of heroin on September 24, 1975, with the trial of Mr. Howard upon the charge of aiding and abetting Mr. Sims in the sale of heroin on October 14, 1975. It is argued that it was prejudicial error to join these two charges since they are separate and distinct from each other. He relies upon CrR 4.3(b)(3):

Two or more defendants may be joined in the same charge:

. . . (3) when, even if conspiracy is not charged and all of the defendants are not charged in each count, it is alleged that the several offenses charged:

(i) were part of a common scheme or plan; or

(ii) were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the others.

and CrR 4.4(b), which states:

The court, on application of . . . the defendant . . . shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.

We note that the trial court has the authority to order consolidation for trial of two or more informations if the defendants could have been joined in a single charge. CrR 4.3(d). Although the record reveals no formal order of consolidation, it is apparent that consolidation did in fact occur.

■ It is well established that the decision upon a motion for separate trials rests within the sound discretion of the trial court. For example, in *State v. Gosby*, 11 Wn. App. 844, 849, 526 P.2d 70 (1974), *aff'd*, 85 Wn.2d 758, 539 P.2d 680 (1975), the court stated:

The denial or granting of a motion for separate trials for two or more defendants jointly charged is a matter within the sound discretion of the trial judge and will not be disturbed unless there is a manifest abuse of discretion.

(Citations omitted.) *See also State v. Ogle*, 78 Wn.2d 86, 469 P.2d 918 (1970); *State v. Dobbs*, 14 Wn. App. 613, 615, 544 P.2d 134 (1975). We find no manifest abuse of discretion here. Mr. Kinsey has failed to point to any specific prejudice as a result of the joinder and we have discovered none from our review of the record. *See State v. Smith*, 74 Wn.2d 744, 755, 446 P.2d 571 (1968). Even if the trial on the September 24 matter had been severed from the trial on the October 14 matter, evidence of the latter transaction

would have been offered in the trial of Kinsey and Sims as proof of the latter's intent, or as proof of a common scheme or plan. *State v. Eller,* 84 Wn.2d 90, 524 P.2d 242 (1974). While the sales were separated by a 3-week period of time, they both occurred in Sims' apartment and were handled in the same manner, *i.e.,* Sims directed a third party to pick up the heroin. The mere fact that evidence may be admissible against one defendant and not against another is not in and of itself proof that the two defendants cannot have a fair trial if tried together. *State v. Courville,* 63 Wn.2d 498, 501, 387 P.2d 938 (1963). The alleged third party in the second sale, Mr. Howard, was acquitted so that Mr. Kinsey's contention that he was prejudiced because he was tried with Howard appears to have little merit.

Second, Mr. Kinsey contends his motion for directed verdict on the ground that he did not aid or abet Mr. Sims in the sale of heroin for profit should have been granted. It is Mr. Kinsey's position that there was no proof of sale or a profit and the charge should have been dismissed for that reason alone. We disagree.

RCW 69.50.410(1) provides:

> Except as authorized by this chapter it shall be unlawful for any person to sell for profit any controlled substance or counterfeit substance classified in Schedule I, RCW 69.50.204, except leaves and flowering tops of marihuana.
> For the purposes of this section only, the following words and phrases shall have the following meanings:
> (a) "To sell" means the passing of title and possession of a controlled substance from the seller to the buyer for a price whether or not the price is paid immediately or at a future date.
> (b) "For profit" means the obtaining of anything of value in exchange for a controlled substance.
> (c) "Price" means anything of value.

The evidence construed in a light most favorable to the State establishes each of the requirements of this statute. Messrs. Kinsey and Sims both possessed and transferred

the heroin to the informant. There is no basis for concluding they did not have title; the inferences are to the contrary, as the informant had traded meat to each of them in return for heroin on prior occasions. Mr. Kinsey claims that he and Mr. Sims were agents of the purchaser informant for the reason stated in answer to the same position taken by Mr. Sims. The term "profit" as used in the statute merely means the giving of something of value in exchange for the heroin. Here, the informant gave Messrs. Sims and Kinsey $275 for the heroin. Mr. Kinsey's contention must fail.

Affirmed.

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied June 30, 1978.

Review denied by Supreme Court November 17, 1978.